LENFESTY, Appellant, vs. CITY OF EAU CLAIRE, Respondent.

*March 13—April 14, 1944.*

For the appellant the cause was submitted on the brief of *Stafford & Stafford* of Chippewa Falls.

For the respondent there was a brief by *John B. Fleming,* corporation counsel, and *Francis J. Wilcox* of Eau Claire of counsel, and oral argument by *Mr. Wilcox.*

MARTIN, J.  Plaintiff was a member of the defendant city's paid fire department for many years, and contributed to the firemen's pension fund as provided in sec. 62.13 (10), Stats. He was permanently injured in line of duty on July 31, 1941. He was retired from active service and granted a pension of $67.50 per month.  Thereafter, he made application to the industrial commission for the benefits of the Workmen's Compensation Act, and on December 2, 1941, the industrial commission made an award ordering and directing defendant city to pay plaintiff benefits at the rate of $27.30 per month, until a total of $5,392.80 had been paid.

Plaintiff's action is for declaratory relief to require defendant to pay plaintiff the full amount of his pension, $67.50 per month, and also the full amount of his compensation award at the rate of $27.30 per month until a total of $5,392.80 has been paid.  The defendant asks that a declaratory judgment be entered, ordering and declaring that it is entitled to deduct from any benefits paid to the plaintiff under the provisions of the award of the industrial commission and the terms of the Workmen's Compensation Act, the amount of any sum which the plaintiff received from the firemen's pension fund.  The

court below granted the declaratory relief asked for by defendant.

The applicable 1941 statutes are printed in the margin.[1]

[1] "102.07 . . . (2) Any policeman or fireman claiming compensation shall have deducted from such compensation any sum which such policeman or fireman may receive from any pension or other benefit fund to which the municipality may contribute; provided further that any other peace officer shall be considered an employee while engaged in the enforcement of peace or in the pursuit and capture of those charged with crime.

"(3) Nothing herein contained shall prevent municipalities from paying teachers, policemen, firemen and other employees full salaries during disability, nor interfere with any pension funds, nor prevent payment to teachers, policemen or firemen therefrom. . . ."

"62.13 (10) (a) Each city having a paid fire department shall have a firemen's pension fund. There shall be paid into such fund the following: Receipts from taxation of fire insurance companies or agents; three and one-half per cent of the salary of each member of the department; fines imposed on members for violation of department rules; deductions from salaries for time lost on account of sickness; rewards in moneys, fees, gifts or emoluments that may be paid or given for or on account of any service of the department or any member thereof, except when allowed to be retained by said member by resolution of the board of trustees of said fund, or given to endow a medal or other permanent competitive award; and earnings upon the deposit, loan or investment of said fund.

"(b) The board of trustees may take for such fund by grant, gift, devise, or bequest any money, property, or thing of value, the amount of value of which does not exceed fifty thousand dollars.

"(c) Such portion of the income in any year which shall not be required to be disbursed in that year under paragraph (e) of this subsection, shall be retained as a permanent fund, and thereafter when the amount in said fund shall be one hundred fifty thousand dollars, only the income therefrom, with the other revenues of said fund, shall be available for the payment of pensions. The council may then diminish the amount paid into said fund from taxation of fire insurance companies or agents, but to such extent only as will leave sufficient income to the said fund to meet the pension requirements.

"(d) Should the income to be available in any year for the payment of pensions be less than the amount required for that year, the city treasurer shall on the first day of August pay into said fund from income tax receipts an amount equal to the deficiency. Temporary withdrawals may be made from the permanent fund to meet current disbursements when no other funds are available, but such withdrawals shall be replaced as soon as other funds can be obtained. . . ."

"201.59 (1) (a) Every city, village or town maintaining a fire department, as herein provided, shall be entitled, for the support thereof,

Plaintiff contends that sec. 102.07 (2), Stats., only permits deductions of sums received from a pension fund "to which the municipality may contribute;" that defendant city has not contributed to the pension fund; that sec. 102.07 (2) does not apply, and therefore no deduction is authorized.

The respondent contends that the pension fund has been entirely built up by the proceeds of the taxation of fire insurance premiums as provided for in sec. 62.13 (10) (a), Stats., and that such proceeds under the provisions of sec. 201.59 (1) (a) are and constitute funds to which the city is entitled for the support of its fire department, and that the contribution of such funds to the pension fund under the requirement of sec. 62.13 (10) (a) is a contribution to the fund within the meaning of sec. 102.07 (2).

Sec. 201.59 (1) (a), Stats., provides that every city, village, or town maintaining a fire department shall be entitled for the support thereof to two per centum upon the amount of all premiums which, during the preceding calendar year, shall have been received by such city, village, or town, or shall have been agreed to be paid to any company, for insurance, including

---

to two per centum upon the amount of all premiums which, during the preceding calendar year, shall have been received by, or shall have been agreed to be paid to any company, for insurance, including property exempt from taxation, against loss by fire in such city, village or town. . . .

"(5) No city, village or town shall be paid any fire department dues for any year unless the industrial commission shall have certified to the commissioner of insurance that the requirements of section 101.29 have been complied with as to such city, village or town. Any fire department dues paid into the state treasury for any city, village or town not entitled to receive the same may be expended by the industrial commission for making the necessary inspections within such city, village or town. In case such dues shall be withheld, where the same shall be payable into any firemen's pension fund or other special funds for the benefit of disabled or superannuated firemen, an amount equal to the fire department dues so withheld shall be paid into such pension fund from any fund of such city, village or town available therefor, and if no such fund be so available, the same shall be included in and paid out of the next taxes levied and collected for such city, village or town. . . ."

property exempt from taxation, against loss by fire in such city, village, or town. The word "contribute" used in sec. 102.07 (2) means any contribution, whether voluntary or by compulsion of law.

Appellant argues that the city treasurer, in transferring the moneys received from proceeds of taxation of fire insurance premiums to the pension fund, acts merely as agent for the pension fund. The fact remains that the moneys come into the hands of the city treasurer as city funds under sec. 201.59 (1) (a), Stats. Respondent concedes that it is the duty of the city treasurer to transfer the moneys to the pension fund, but contends, and we think correctly so, that the disbursement of such funds to the pension fund constitutes a contribution by the city under sec. 102.07 (2).

Respondent makes the further contention that even if it were held that the payment of receipts on fire insurance taxation by the city into the pension fund is not a contribution by the city within the meaning of sec. 102.07 (2), Stats., the pension fund is one to which the city *may* contribute. Respondent points out that under the statutory scheme there are two contingencies under which the city may be forced to contribute funds other than the tax on fire insurance premiums. One of these is provided in sec. 62.13 (10) (d), which provides that if the income from the funds is not sufficient to meet the annual payments, then the income tax receipts of the city shall be used in so far as necessary to make up the deficiency. The other contingency is that in the event that under sec. 201.59 (5) the city shall lose its right to receive the proceeds of the taxation of fire insurance premiums, then the city is required to pay into the fund out of general taxes an amount equal to such proceeds. Respondent further points out that in the first contingency the use of income tax receipts by the city would constitute a contribution to such fund; likewise, payment into the fund under the second contingency would constitute a contribution from the city.

Appellant argues that the phrase "may contribute" in sec. 102.07 (2), Stats., should be read and interpreted as "may have contributed," thus putting the act of contribution in the past. Such construction would make sec. 102.07 (2) inapplicable, making the deduction referred to in said section unauthorized. While we hold that the proceeds of the taxation of fire insurance premiums are funds to which the city is entitled for the support of its fire department, under sec. 201.59 (1) (a), and that the transfer of such funds to the pension fund must be regarded as a contribution and satisfies the requirement of sec. 102.07 (2), we also hold that the city's duty to make the deduction provided for under sec. 102.07 (2) depends upon the character of the city's liability. The city may contribute to the pension fund at any time. We have mentioned two contingencies wherein, if the pension fund should not be sufficient to meet the annual payments, income tax receipts of the city shall be used to make up the deficiency; and in the event that under sec. 201.59 (5) the city should lose its right to receive the proceeds of the taxation of fire insurance premiums, in that event the city is required to pay into the pension fund, out of the general taxes, an amount equal to such proceeds.

Appellant makes the further contention that sub. (3) of sec. 102.07, Stats., which was enacted subsequent to sub. (2), repealed sub. (2), the subsection under which the city claims the right to make the deduction in question. Sub. (2) was enacted by ch. 599, Laws of 1913, published June 28, 1913; sub. (3) was enacted by ch. 707, Laws of 1913, published July 31, 1913. There is nothing in the language of sub. (3) to indicate any legislative intent to repeal sub. (2). It is important to note that sec. 102.07 and the several subsections thereof are a part of ch. 102, Stats., which is the Workmen's Compensation Act. It is apparent that sub. (3) was enacted to prevent any interference with pension funds. Sub. (2) affects compensation payments only. It specifically provides that any fireman claiming compensation shall have deducted

from such compensation any sum which he may receive from any pension or other benefit fund to which the municipality may contribute. We see no conflict between the provisions of subs. (2) and (3) of sec. 102.07. The doctrine of implied repeal is not favored and an earlier act will be considered to remain in force unless it is so manifestly inconsistent and repugnant to the later act that they cannot reasonably stand together. *Milwaukee County v. Milwaukee Western F. Co.* 204 Wis. 107, 112, 235 N. W. 545; *Pabst Corp. v. Milwaukee,* 190 Wis. 349, 208 N. W. 493; *Madison v. Southern Wis. R. Co.* 156 Wis. 352, 146 N. W. 492.

Plaintiff is not entitled to both pension and compensation. The city claims the right to pay only $67.50 per month, the amount due plaintiff as a pension, and makes this payment solely from the pension fund. Since the pension payments are the larger, their deduction from the compensation payments, under the provisions of sec. 102.07 (2), Stats., reduces the compensation award to nothing; and plaintiff is entitled only to the pension payments. Under sub. (3) of sec. 102.07, the pension fund may not be interfered with. On the undisputed facts, plaintiff is entitled only to the pension.

Appellant further contends that no deduction from compensation was allowed by the industrial commission. The city's right and duty to make the deduction is provided for by sec. 102.07 (2), Stats.; that determines the method under which the city must act. The application and construction of the statute is for the court to decide. The fact that the industrial commission did not refer to such deduction in making its award cannot alter the rights of the parties or in any way limit the duty of the city to make the deduction. The statute itself provides for the deduction.

Finally, appellant contends that sec. 102.07 (2), Stats., is void because it violates the constitutional rule of equality and uniformity. In support of this contention appellant claims that said section applies only to a certain designated class of

policemen and firemen; that the classification is not germane to any purpose of the legislation; that it applies only to those municipalities where the municipalities may contribute to the pension fund. The obvious purpose of the statute is to prevent payment by the city of both compensation and pension benefits where both were derived from municipal funds; if the municipality were of a class which did not have a pension fund to which it may contribute, the statute would not apply.

Appellant argues that under the provisions of the statute we may have policemen or firemen in two cities of the state of the same size and characteristics, yet the policemen and firemen of one of such cities, upon becoming disabled in line of duty, are denied pension or compensation benefits, while such benefits are granted to the others. It is argued that the classification in this case is arbitrary, unreasonable, and not germane to the subject of the compensation act. However, appellant concedes that under both the state and federal constitutions it is not required that all persons be treated exactly alike, and that there may be classifications of persons similarly situated, having characteristics legitimately distinguishing the members of one class from those of another class. The authorities cited by appellant to the point that the statute violates the constitutional rule of equality and uniformity do not sustain his contention. It will serve no purpose to further discuss the proposition. Defendant city has not only the right but the duty to make the deduction made in this case.

*By the Court.*—Judgment affirmed.