Dear Chancellor Brisch
¶ 0 The Attorney General has received your request for an official opinion asking:
1. Do the Oklahoma State Regents for Higher Education have thelegal authority to establish a trust fund in the State Treasuryin which to deposit monies from its revolving funds, agencyspecial accounts, or any other funds available to the Regents foremployee retirement payments?
 2. If the answer to the first question is in the affirmative,do the State Regents have the legal authority to invest themonies in question with the interest earned thereby beingreturned to the trust fund to be used by the Regents for employeeretirement payments?
¶ 1 The Oklahoma State Regents for Higher Education are a constitutionally mandated coordinating board of control, invested with certain powers under the constitution relative to overseeing the State System of Higher Education. Okla. Const., ArticleXIII-A, Section 2. This constitutional grant of authority has only rarely been examined by the courts of this state, but primarily extends to the setting of standards of higher education that must be adhered to by the institutions of the State System, to the conferring of authorization to the various institutions to conduct certain courses of study and to award degrees and other forms of academic recognition, and to oversight of the fiscal needs of the various schools. Okla. Const., Article XIII-A, Section 2 and Article XIII-A, Section 3.
¶ 2 One important distinction between the powers of the State Regents and the other various boards of regents of the many schools in the state is that while the State Regents oversee the State System in general terms, and indeed, have exclusive authority over such areas as the setting of educational standards, they do not directly control the day-to-day operations of the state schools of higher learning. Such "governance" authority is delegated by law to a number of "second tier" boards of regents, some of which are invested with authority by constitutional mandate, and some of which are only statutorily granted such powers. Compare Okla. Const., Article VI, Section31a; Article XIII, Section 8; Article XII-B, Section 1, with70 O.S. 3407.2 (1981). The degree of authority granted to these various other boards of regents varies tremendously from board to board, even as among the constitutionally authorized boards, and no attempt is made here to examine such differences.
¶ 3 By virtue of the State Regents' lack of constitutionally mandated "governance" powers over the internal operations of their offices and employees, one must look primarily to the statutes of the State in order to examine their powers to provide retirement benefits to their employees. A.G. Opinion. No. 80-010. With specific relevance to your inquiries, the terms of 70 O.S.3205 (1987) provide, in pertinent part:
 (a) . . . The State Regents may establish and maintain plans for tenure and retirement of its employees and may provide hospital and medical benefits, accident, health, and life insurance, and annuity contracts for such employees, and pay for all or part of the cost thereof, with funds available for payment of its operating expenses.
 (b) Monies received by the State Regents for payment of the cost of maintaining offices, payment of personnel, and other operating expenses shall be deposited in a special fund in the State Treasury, to be known as the "Oklahoma State Regents for Higher Education Revolving Fund." Such fund shall be a continuing fund not subject to appropriation by the Legislature, and shall be subject to expenditure by and shall be paid out upon the order of the State Regents at such times and in such amounts as the State Regents may direct. Disbursements from such revolving fund shall be by State Warrants issued by the State Treasurer.
¶ 4 You ask, relative to these statutes, whether the State Regents have the authority to establish a "trust fund" from which the State Regents can pay out any monies owed retirants of their administrative staff. For the purposes of this opinion, it is assumed that the payment of such funds would come from a single lump-sum funding of this account, with all necessary monies contributed thereto coming out of funds currently available to the State Regents.
¶ 5 The key to this analysis is largely dependent upon the manner in which this "trust fund" would be established and controlled. The terms of 70 O.S. 3905, above, clearly authorize the Regents to fund retirement benefits programs for their employees out of their operating expenses, with the monies to be devoted to such endeavors to be placed in the Regents' operating account in the State Treasury. However, there is no mechanism in that law for a specially-devoted account exclusively segregated for the funding of such a program.
¶ 6 On the other hand, a series of provisions in state law do generally provide for the establishment of special agency accounts. See, 62 O.S. 7.2 (1987). A special agency account differs from a revolving fund in that monies from a revolving fund may be expended only upon warrants issued by the State Treasurer, and such expenditures are subject to approval and encumbrance by the Director of State Finance. Special agency accounts are not subject to such procedures since the institution directly draws vouchers on the State Treasury. See, 62 O.S.41.18 (1981); and A.G. Opin. No. 74-230.
¶ 7 As to the state agencies in general, 62 O.S. 7.2 provides that a Special Agency Account Board is created to oversee the establishment of special agency accounts. The membership of this Board is comprised of the Director of State Finance, the State Treasurer and the Director of the Legislative Service Bureau.Id. In the case of institutions of higher learning, however, the Special Agency Account Board acts in conjunction with the State Regents to establish special agency accounts as appropriate which shall be consistent with the provisions of the Oklahoma Budget Act of 1947 as it relates to institutions of higher learning. Id. That special treatment is reflective of the State Regents' exclusive control over the allotments made by them to the various institutions of higher learning.
¶ 8 Specifically mentioned in the statutes as a proper purpose for the type of account that may lawfully be created under these provisions are special agency accounts for the purpose of providing:
 1. Benefit programs for individuals, including, but not limited to, unemployment compensation, workers' compensation and state retirement programs;
62 O.S. 7.2(C)(1) (1987) (Emphasis added).
¶ 9 Under the clear and plain terms of this statute, a special agency account may be created to serve as a mechanism for the receipt of monies to be devoted to their retirement programs for employees of the State Regents, if the Special Agency Account Board approves its establishment. It is important to distinguish, however, the difference between the ability of an individual institution in the State System to establish, and its ability to have established for it, a special agency account, which authority lies largely in the discretion of the State Regents to approve, and the similar, but not identical ability of the State Regents to have such an account established for their own employees, a decision that rests not with the State Regents, themselves, but with the Special Agency Account Board.
¶ 10 As to your second question, whether interest income earned upon the monies that might be devoted to such purposes may be restricted so that all such income is paid back into the specially-created fund, there is no provision in state law which currently permits such segregation. Under the terms of 62 O.S.7.1 (1987), and 62 O.S. 89.2, 62 O.S. 203, and 62 O.S. 362
(1981), read in conjunction with one another, interest earned by the State Treasurer through his investment activities is credited to the State General Revenue Fund, unless a specific statute decrees to the contrary. The Oklahoma statutes are replete with examples of special provisions which have been promulgated by the Legislature and which call for the crediting of interest income to the specific fund from which the interest was earned. Seee.g., 2 O.S. 1036.1 (1981); 29 O.S. 3-305 (1981); and 74O.S. 1312 (1987).
¶ 11 It is well settled that the Legislature possesses full authority to address all rightful subjects through legislation, unless that inherent authority has been channeled or limited by specific constitutional fiat. Draper v. State Board ofEqualization, 414 P.2d 276 (Okla. 1966). Legislative silence, when it has authority to speak, may be considered as giving rise to an implication of legislative intent. City of Duncan v.Bingham, 394 P.2d 456 (Okla. 1964). The Legislature, having full authority to authorize the State Regents to establish an account for retirement purposes which would retain all investment income earned thereon, and having failed to do so, when it has plainly so provided in numerous instances elsewhere, is deemed to have forbidden such an arrangement here. In this regard, this opinion does not attempt to address the various rights or obligations that might be evident in a situation involving a restricted gift or devise to the State Regents, nor a situation involving any of the other components of the State System of Higher Education, as opposed to the State Regents, themselves, and their respective employees. Similarly, it is recognized that, in some circumstances, legislative intrusion into the manner in which the State Regents operate their administrative offices could impermissibly interfere with their constitutional prerogatives. However, such is not the case in this instance.
¶ 12 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. The State Regents for Higher Education, under the terms of70 O.S. 3905 (1987), do not have the authority to establish asegregated trust fund in their revolving fund account in theState Treasury for the purposes of funding, with a singlelump-sum payment of money from their operating expenses,retirement benefits for employees of the State Regents. The StateRegents, under the authority of 62 O.S. 7.2 (1987), mayrequest the State Special Agency Account Board to establish sucha fund in the form of a special agency account, such decisionbeing in the discretionary power of the Board to approve ordisapprove.
 2. No current authority exists for the retention by the StateRegents of interest earned upon the investment of monies placedby the State Regents in their revolving fund account in the StateTreasury, or in a special agency account funded from moniescoming from the State Regents operating expenses, although theLegislature could so provide. This opinion does not addresssituations involving the restricted gift or devise of monies tothe State Regents for such purposes, nor does it addresssituations involving any other component of the State System ofHigher Education.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
MICHAEL SCOTT FERN ASSISTANT ATTORNEY GENERAL